Charles A. Nemish and Evelyn W. Nemish v. Commissioner.
Nemish v. Commissioner
Docket No. 2908-68.
United States Tax Court
T.C. Memo 1970-276; 1970 Tax Ct. Memo LEXIS 85; 29 T.C.M. (CCH) 1249; T.C.M. (RIA) 70276; September 29, 1970. Filed Charles A. Nemish, pro se, 401 Moseley Rd., Hillsborough, Calif.Richard D. Worsley and Lawrence G. Becker, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' income tax for 1964 in the amount of $504 and for 1965 in the amount of $417. The issue for decision is whether Charles A. Nemish incurred certain expenses in connection with a trade or business of being an author so that they may be deducted under section 162(a). [1]
Findings of Fact Charles A. Nemish (hereinafter petitioner) and Evelyn W. Nemish, husband and wife, filed joint Federal income tax returns for *86 1964 and 1965 with the district director of internal revenue, San Francisco, California. At the time they filed their petition, they were legal residents of Hillsborough, California. Since 1951 petitioner has been employed by United Air Lines as a pilot. During 1964 and 1965 he was a copilot, receiving a salary in the amounts of $19,036 and $22,169 in the respective years. His work schedule afforded him 15 to 18 days of free time each month. Petitioner first became interested in writing at an early age. When he was a sophomore in high school, he wrote a play which was performed by his fellow students. While working toward his degree of Bachelor of Science in Business Administration, he wrote guides and articles which he sold to his fellow students. During World War II, when his college studies were interrupted by military duties, he served as a pilot in the Naval Air Corps and accumulated materials which he used in his stories. Petitioner sold his first short story in the middle 1940's for $75 or $80. During the decade of the 1940's, he had gross receipts from the sale of short stories, articles, and student guides of approximately $2,000. In the 1950's, his gross receipts from *87 writing were about $2,500. From 1958 through 1967, petitioner wrote at least 14 short stories which he submitted personally and through literary agents to various publishers. With the exception of an offer of October 20, 1958, however, his stories were uniformly rejected by the publishers. The magazines to which he submitted manuscripts included Playboy, Argosy, The Saturday Evening Post, Redbook, Modern Man, Our Navy, Cosmopolitan, and Seventeen. In the early 1960's, petitioner commenced work on a novel, Orion, which he had been planning for many years; it is largely an autobiography. He later began work on a second novel, Mr. Gus. Petitioner maintained one room in his three-bedroom house as a place in which to write. He also maintained in his home a library in which he kept reference books for use in his writing. During 1964 and 1965, petitioner and his wife made trips to various vacation areas - including Reno and Carson City, Nevada; Monterey and Carmel, California; and the Lake Tahoe area of Nevada and California. Petitioner claimed deductions for writing expenses in 1964 and 1965 as follows: 1964
1965
Automobile expense
$ 972.00
$ 487.00
Travel expense and writ- ing materials
840.00
980.00
Home expense 418.00
289.00
Total
$2,230.00
$1,756.00
*88 The Commissioner disallowed these deductions on the ground that they were "not incurred in carrying on a trade or business or in transactions entered into for profit." Ultimate Finding of Fact Petitioner was not engaged in carrying on a trade or business as an author during 1964 and 1965. Opinion For petitioner to be entitled to a deduction under section 162(a), the expenses must have been "paid or incurred during the taxable year in carrying on [a] trade or business." Whether the activity generating the expense constitutes a trade or business depends primarily on the existence 1251 of a bona fide profit motive. , affd., (C.A. 2, 1967); (C.A. 2, 1964), affirming a Memorandum Opinion of this Court. The "warp and woof of the definitions of 'carrying on any trade or business'" as used in the statute is that "the activity or enterprise claimed to constitute 'carrying on a business' be entered into, in good faith, with the dominant hope and intent of realizing a profit, i.e., taxable income, therefrom." *89 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court. And the existence or absence of a profit motive is a question of fact to be decided from an examination of all the facts and circumstances of the case. (C.A. 2, 1949), affirming a Memorandum Opinion of this Court, certiorari denied . While the existence of an actual profit is not required, (C.A.D.C., 1933), and the expectation of a profit need not be a reasonable one, , a long record of expenses in excess of revenues may indicate that the activity is carried on as a hobby rather than as a business. , affirmed per curiam, (C.A. 6, 1955), certiorari denied . Accepting petitioner's estimates of his income from 1940 until 1957, he received a total of $4,500 from his writings; since 1958, he has made no sales of his works. Yet from 1958 to the date of trial, he deducted an average of $1,500 per year as writing expenses. Although we have no *90 evidence on this point, we may reasonably assume that he incurred the same kind of expenses prior to 1958 as during the tax years. [2] In any event, for a 25-year period, starting in the mid-forties, his "writing" expenses, greatly exceeded his revenues. While petitioner spoke in glowing terms of the potential profit from his novels, [3] we do not think that this indicates a bona fide profit motive. Giving consideration to petitioner's adequate income from his full-time job as a pilot, to his enthusiasm for writing evident ever since he was a child, and the lack of profits over a 25-year period, we do not think he did his writing for financial gain. The credible evidence simply does not show that he incurred the disputed expenses "in good faith, with the dominant hope and intent of realizing a profit." . *91 "The gratification derived from an occupation worth doing, possibly beneficial to others and probably requiring long hours of arduous labor, must still not be confused with an intention to return a profit." . For yet another reason, we are not convinced that petitioner's travel expenses are deductible: The evidence does not establish any proximate relationship between his travels and his writings. In response to a specific question on this point, petitioner testified that he needed "background" on certain localities, but his testimony leaves open the worrisome question why he, an airline pilot whose major business is travel, needed background only on areas located near recreational resorts, where he and his wife journeyed and admittedly engaged in the activities normally carried on by vacationers. He introduced into evidence several short stories which he had unsuccessfully offered for publication, but he made no effort to demonstrate how his travels aided in their production. And the setting of his projected novels is not in the West, where he incurred the disputed expenses, but in an entirely different part of the country. We do not think *92 the record justifies a finding that the expenses of his holiday excursions were incurred for business purposes. [4]
Decision will be entered for the respondent. 1252 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Contrary to petitioner's contention, an outlay need not be deducted from income to constitute an expense. ↩
3. * * * if and when I finally sell this first novel, then I know that sooner or later I am going to make a killing - it will be tremendous, these days a novel will go for hardly less than one hundred thousand dollars.↩
4. Petitioner lays heavy emphasis on the fact that he was able to convince revenue agents who examined his returns for certain years other than the ones here in controversy that the travel expenses which he deducted for those years were allowable. Neither the opinions of those revenue agents nor the opinion of the revenue agent who examined petitioner's returns for the years before the Court has any probative value in the resolution of the issue presented for decision. James H. Fitzner [Dec. 23,515], .↩